United States District Court
Southern District of Texas
**ENTERED**
August 31, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF SHELLEY MOTT, DECEASED; STEPHANIE SMITH; HIRAM MOTT; and GLENDA MOTT, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 4:18-CV-4213 |
| FCA US LLC; CHRYSLER GROUP, LLC; FABTECH INDUSTRIES, INC.; et al., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Plaintiffs' Motion for Partial Summary Judgment. (Dkt. No. 94). The Court has considered the motion, all briefing, oral arguments, the expert reports, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** Plaintiffs' Motion for Partial Summary Judgment be **DENIED**. Plaintiffs' Motion to File a Reply to Defendant Fabtech's Surreply (Dkt. No. 140) is **GRANTED**.

### I.  Case Background

This is a product liability action arising from a single-vehicle accident on July 16, 2015. Plaintiffs are the estate and parents of the driver, Shelley Mott ("Mott"), who was killed in the accident. Chrysler LLC (formerly known as DaimlerChrysler LLC) designed and manufactured the subject vehicle, a 2008 2500 Dodge Ram. Defendant FCA US, LLC ("FCA") (formerly known

---

[1] This case was referred to the Undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. *See* Dkt. No. 95.

as Chrysler Group LLC) assumed certain liabilities of Chrysler LLC after the latter entity entered bankruptcy. Defendant Fabtech Industries, Inc. ("Fabtech") manufactured an after-market lift kit, parts of which were installed on the subject vehicle at the time of the accident. On September 19, 2018, Plaintiffs filed this action in state court, alleging that defects in the subject vehicle's steering system and/or in the after-market lift kit caused the crash.[2] Plaintiffs' complaint pleaded, *inter alia*, claims of strict products liability against FCA and Fabtech; and negligence against Fabtech.[3] FCA removed the action to this Court on November 6, 2018. On July 16, 2019, before the deadlines for expert reports and discovery, including expert depositions, the Court stayed the scheduling order deadlines pending resolution of a motion to dismiss.[4]

On November 26, 2019, while scheduling deadlines remained stayed, Plaintiffs filed the pending Motion for Partial Summary Judgment (Dkt. No. 94) (hereinafter "Motion"). In the Motion, Plaintiffs seek summary judgment on "the issues of liability against the Defendants as set out in the Statement of Issues."[5] The Motion identifies two "issues requiring resolution": (1) whether "the sector shaft contained a defect which should have been caught by [FCA] before the truck left the factory and which was a proximate cause of the broken sector shaft"; and (2) whether "the Fabtech lift kit placed additional stress on the sector shaft which was another proximate cause of the broken sector shaft."[6]

---

[2] *See* Dkt. No. 1-2, Ex. A, Pls.' Orig. Pet.
[3] *See* Dkt. No. 42, First Am. Compl.
[4] *See* Dkt. No. 28, Sched. Order; Dkt. No. 70, Order.
[5] Dkt. No. 94 at 5.
[6] *Id.* at 4-5.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] The movant must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[8] The movant must support the assertion that a fact cannot be disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[9]

If the movant satisfies this initial burden, the burden shifts to the nonmovant, who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading.[10] In reviewing a motion for summary judgment, the Court takes the nonmovant's evidence as true and draws all reasonable inferences in his favor.[11] However, "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" are insufficient to carry the nonmovant's burden.[12]

## III.  Evidence of Record

In connection with the briefing on the Motion, the parties submitted evidence in the form of affidavits from various expert witnesses. FCA objected to, and requested that the Court strike,

---

[7] Fed. R. Civ. P. 56(a); *see also Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019).
[8] Fed. R. Civ. P. 56(a).
[9] Fed. R. Civ. P. 56(c)(1); *see Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).
[10] *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).
[11] *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).
[12] *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003).

the testimony of Plaintiffs' expert John Sousa ("Sousa").[13] Plaintiffs requested that the Court strike the testimony of FCA's experts Dr. Nicholas Durisek ("Durisek") and John Slater ("Slater"), and Fabtech's experts John Cunag ("Cunag"), Gary Rogers ("Rogers"), and Richard Baron ("Baron").[14] The Court denied both parties' requests to strike various experts, without prejudice to renewal at an appropriate time, in part because the requests were filed before the subject experts had been deposed.[15] The Court found the experts were qualified and provided competent summary judgment testimony for the purpose of the pending Motion.[16]

Plaintiffs contend that the subject vehicle left the road after the sector shaft—a component of the vehicle's steering system—broke.[17] Plaintiffs allege that the Dodge truck model at issue was inadequately equipped to handle the weight of its diesel engine. Plaintiffs further allege that the subject truck was equipped with an after-market Fabtech lift kit, and contend that the pitman arm and other components of the lift kit on the subject vehicle placed additional stress on the sector shaft and was a proximate cause of the sector shaft breakage in Mott's truck.[18]

Plaintiffs' Motion relies on affidavits and other materials provided by their expert witnesses: Buddy Chance ("Chance"), a design engineer; Sousa, a certified technician; Dr. Naresh

---

[13] *See* Dkt. No. 101, Deft. FCA's Resp. to Mot. for Summ. J. at 5-7.
[14] *See id*; Dkt. No. 103, Pls.' Mot. to Strike; Dkt. No. 105, Pls.' Reply to Resp. to Mot. for Summ. J.
[15] *See* Dkt. No. 220, Min. Order at 2. When Plaintiffs filed the pending Motion, no depositions of Defendants had been taken; Defendants' expert designations had not been made and were not yet due; and no expert depositions had been taken. The deadlines for those events were subsequently reset and have not yet passed as of the date of this Memorandum and Recommendation. *See* Dkt. No. 70, Order; Dkt. No. 82, Joint Mot. to Reset Sched. Order Deadlines.
[16] *Id.*
[17] Dkt. No. 94, Pls.' Mot. for Summ. J. at 2.
[18] *Id.* at 2-3.

Kar ("Kar"), a metallurgist; and Brian Jones ("Jones"), an accredited accident reconstruction specialist. Chance's affidavit states that he personally inspected the subject truck and visually observed a forging defect in the sector shaft.[19] Chance opines that "Chrysler's review of manufacturing quality control practices and procedures for critical safety components at the supplier should have identified the inadequacy in the manufacturing process of the sector shaft," and "[t]he failure to have adequate quality control measures in place for the detection of the defective part resulted in the defective sector shaft breaking thereby causing Shelley Mott's death."[20]

Kar's affidavit details his testing of the sector shaft and concludes "that the subject component fractured due to cracks in the component that propagated over time by fatigue then eventually failing by overload when the weakened cross section could no longer withstand the applied loads."[21] Kar further opines "that these fatigue crack failures could be due to currently unknown manufacturing or quality issues attributed to FCA the vehicle manufacturer," and that "[i]t is also possible that the sector shaft fatigue failure could be due to Fabtech recall related issues . . . or incompatibility issues."[22] Jones, Plaintiffs' accident reconstructionist, states that he used widely accepted and validated software to perform simulations and concludes that the subject sector shaft "was most likely damaged prior to the subject rollover; thus, Ms. Mott was unable to steer the vehicle seconds prior to the rollover."[23]

Defendants contend the crash was due to driver error and that the damage to the sector

---

[19] Dkt. No. 94-1, Ex. 1 to Pls.' Mot. for Summ. J. ¶ 4.
[20] *Id.*
[21] Dkt. No. 94-3, Ex. 3 to Pls.' Mot. for Summ. J. ¶ 6.
[22] *Id.*
[23] Dkt. No. 94-4, Ex. 4 to Pls.' Mot. for Summ. J. ¶ 17.

shaft was a result of the crash and subsequent rollover. FCA's response attaches the affidavit of their accident reconstructionist, Durisek, stating his conclusions that (1) "[t]he cause of the crash is Ms. Mott was inattentive and drove off the right side of the roadway, steered inappropriately to the left, and then steered inappropriately to the right, more than what was required to regain the travel lanes"; (2) "[p]rior to the rollover portion of the crash, Ms. Mott had steering capability and the modified Dodge Ram 2500 HD responded to her steering inputs"; and (3) "[h]ad the sector shaft been fractured prior to this . . . the vehicle would not have responded to her steer input[.]"[24] FCA's metallurgist concluded that the "[c]racking and deformation of the sector shaft remnant indicates high impact loads were involved, suggesting that this damage occurred during the roll sequence."[25] FCA also cites an investigating officer's report stating that the crash occurred because Mott's vehicle "failed to drive in a single lane" and "overcorrected."[26]

Fabtech's accident reconstruction expert, Cunag, states that he concluded Mott had full steering control until her vehicle tripped and began to roll over, and that neither the sector shaft nor any of the Fabtech lift components contributed to the accident.[27] Fabtech's design engineer, Rogers, states that he concluded the subject vehicle had a fully functioning steering system from the time the vehicle left the westbound lane, through the initiation of the rollover, and that the sector shaft fractured during the rollover phase of the accident, after the vehicle tripped.[28] Rogers also criticizes the methodology and assumptions underlying Chance's affidavit and disputes

---

[24] Dkt. No. 101-1, Ex. A to FCA's Resp. to Mot. for Summ. J. ¶ 22.
[25] Dkt. No. 101-4, Ex. D to FCA's Resp. to Mot. for Summ. J. ¶ 17.
[26] Dkt. No. 101-3, Ex. C to FCA's Resp. to Mot for Summ. J.
[27] Dkt. No. 102-1, Ex. 1 to Fabtech's Resp. to Mot. for Summ. J. ¶¶ 7-8.
[28] Dkt. No. 102-1, Ex. 2 to Fabtech's Resp. to Mot. for Summ. J. at 6-7.

Chance's conclusions.[29]

Fabtech's material scientist, Baron, states that he concluded within a reasonable degree of engineering probability that: (1) the sector shaft most likely fractured in a single-event ductile overload during the rollover of the vehicle; (2) a crack discovered at the separation fracture did not cause separation of the sector shaft prior to the accident; (3) based on the metallurgical investigation to date, no evidence has been found of an anomaly, quench cracking, or machining damage that could have caused or contributed to a fatigue crack within the splines of the sector shaft; (4) none of the available evidence indicated the Fabtech pitman arm contributed to the initiation of the crack shown on the sector shaft; and (5) the Fabtech recall of a different pitman arm has no relevance to the product in this incident.[30]

### IV. Analysis

#### A. Motion and Briefing Requirements

As a procedural matter, Plaintiffs' Motion fails to satisfy applicable local motion practice rules and the requirements of a Rule 56 motion. A party moving for summary judgment bears the initial burden to inform the Court of the basis for its motion and to identify the portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[31] Among other requirements, the movant must "identify[] the claim or defense—or the part of each claim or defense—on which summary judgment is sought,"[32] and must "cit[e] to particular parts of materials in the record" supporting its assertion that a fact cannot be disputed.[33]

---

[29] *Id.* at 3-4.
[30] Dkt. No. 102-1, Ex. 3 to Fabtech's Resp. to Mot. for Summ. J. ¶ 17.
[31] *Celotex*, 477 U.S. at 323; *see* Fed. R. Civ. P. 56(c); *see also* L. Civ. R. 7.7.
[32] Fed. R. Civ. P. 56(a).
[33] Fed. R. Civ. P. 56(c)(1).

Plaintiffs' Motion fails to identify the claims on which Plaintiffs believe they are entitled to judgment as a matter of law, as to which Defendant or Defendants; or to identify the legal elements of those claims. As such, the Motion fails to comply with Rule 56. Plaintiffs' Motion also fails to recite the standard for summary judgment, instead invoking in cursory fashion "simply the summary judgment standard under Rule 56[] and the case law cited regarding the Rule."[34] The Motion otherwise fails to set forth the summary judgment standard or to cite any supporting authority for Plaintiffs' position, in disregard of various federal and local motion requirements.[35] Moreover, Plaintiffs' Motion fails to cite particular portions of the record establishing facts they contend are beyond dispute; fails to offer argument connecting any purportedly undisputed facts with the elements of any claim; fails to explain how the summary judgment evidence entitles Plaintiffs to judgment as a matter of law; and fails to include a proposed order specifying the nature of the relief sought, as required under applicable rules. For these reasons, Plaintiffs' Motion is deficient and is subject to denial for its failure to comply with applicable requirements.[36]

### B. Disputed Material Facts

In addition to being procedurally deficient, the Motion fails to satisfy Plaintiffs' burden under Rule 56 to show the absence of a material factual dispute as to any claim against any

---

[34] *See* Dkt. No. 94, Pls.' Mot. for Partial Summ. J. at 5.

[35] *See, e.g.*, L. Civ. R. 7.1 (requiring an opposed motion to "[i]nclude or be accompanied by authority," and "[b]e accompanied by a separate proposed order granting the relief requested and setting forth information sufficient to communicate the nature of the relief granted"); Judge Charles Eskridge's Court Procedures 18(e) (requiring a motion to include "a short statement of and authority for the standard of review for each issue").

[36] *See* Fed. R. Civ. P. 56(e) (stating that court may "issue any . . . appropriate order" to address a party's failure to properly support an assertion of fact); L. Civ. R. 11.4 ("A paper that does not conform to the local or federal rules or that is otherwise objectionable may be struck on the motion of a party or by the Court.").

Defendant in this action. As noted *supra*, the Court denied Plaintiffs' and FCA's requests to strike the testimony of various experts and found those experts qualified and their testimony competent for the purpose of the pending Motion.[37] Based on this affidavit evidence, the record is replete with conflicting expert testimony as to the facts Plaintiff assert are undisputed.

Respecting FCA, Plaintiffs seek summary judgment as to their assertion that "the sector shaft contained a defect which should have been caught by [FCA] before the truck left the factory and which was a proximate cause of the broken sector shaft."[38] Plaintiffs contend their experts found "inadequacies in the sector shaft and front end" of the subject vehicle; determined that the sector shaft bore a defect that "should have been caught by Chrysler at the factory"; "found numerous cracks and voids in the sector shaft"; and "concluded that the sector shaft broke on the roadway."[39]

However, as set forth *supra* Part III, FCA's experts conclude the opposite—for example, Durisek concludes that the vehicle retained steering ability until the rollover occurred; and FCA's metallurgist, Slater, notes evidence that damage to the sector shaft occurred as a result of the vehicle tripping and rolling over, rather than causing the accident. Under well-established law in the Fifth Circuit, "[a] grant of summary judgment is improper when resolution of the issues requires resolving a 'battle of the experts.'"[40] As the record clearly reflects conflicting expert testimony material to whether the sector shaft contained a defect that FCA should have noticed,

---

[37] *See supra* n. 1; *see also* Dkt. No. 220, Order.
[38] Dkt. No. 94, Pls.' Mot. for Summ. J. at 4.
[39] *Id.* at 3.
[40] *Allure Energy, Inc. v. Nest Labs., Inc.*, No 9-13-CV-102, 2015 WL 11110635, at *2 (E.D. Tex. May 11, 2015); *see also Watson v. Allstate Texas Lloyd's*, 224 F. App'x 335, 342 (5th Cir. 2007).

summary judgment is not warranted as to FCA's liability.

Plaintiffs also fail to show they are entitled to judgment as a matter of law as to Fabtech. In their proposed Reply to Fabtech Industries Inc.['s] Surreply, Plaintiffs for the first time list the elements of a negligence claim and assert that newly discovered evidence shows that Fabtech has admitted the elements of duty and breach of duty.[41] Plaintiffs argue that the affidavit of Chance establishes causation and that the contrary testimony of Fabtech's experts should be stricken, and seek a determination by the Court that "the Fabtech lift kit placed additional stress on the sector shaft which was another proximate cause of the broken sector shaft."[42]

However, the affidavits of Fabtech's experts reflect factual disputes material to Plaintiffs' negligence claim, including concerning the causation of damage to the sector shaft of the subject vehicle. Fabtech's experts provide evidence supporting Fabtech's argument that there was no design defect in the lift kit, and that no design defect was a producing cause of the accident. As the Court has determined these experts' affidavits are competent summary judgment evidence for the purpose of the pending Motion, the record reflects a genuine dispute of fact material to Fabtech's liability, and summary judgment is not warranted.

## V.     Conclusion

Plaintiffs' Motion fails to demonstrate an absence of material factual issues on any of their strict product liability or negligence claims. Even assuming, without deciding, that Plaintiffs' Motion and expert affidavits satisfied Plaintiffs' initial summary judgment burden as to any issue of liability, both FCA and Fabtech have produced expert testimony establishing genuine factual

---

[41] *See* Dkt. No. 140, Pls.' Mot. to file Reply to Deft. Fabtech's Surreply to Mot. for Summ. J. and Reply at 4-7.
[42] Dkt. No. 94, Pls.' Mot. for Partial Summ. J. at 4-5.

disputes material to elements of Plaintiffs' claims. For the reasons explained herein, the Magistrate Judge **RECOMMENDS** that the District Judge **DENY** Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 94). Plaintiffs' Motion to File a Reply to Defendant Fabtech's Surreply (Dkt. No. 140) is **GRANTED**.

### Notice of Right to Object

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties, who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Court Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on August 31, 2020.

Sam S. Sheldon
United States Magistrate Judge